Good morning, Your Honors. My name is Serge Stoney. I represent the appellants, Giannetti Feldman Associates. Your Honors, in this case, Burlington contends that the claims against its insured are excluded by professional services exclusion, even though no client of Giannetti Feldman ever sued for professional malpractice or for professional services. The claims that were asserted against Giannetti were by Haseko, the developer, and Keller, the contractor, and they were for negligence generally. They were not limited to the provision of professional services. And while the Keller complaint did refer to Giannetti as a provider of design services and that its claim related in part, not totally, but in part, to the rendering of services and all products, the claim was not limited to just professional services. What other basis would there be for suing Giannetti? Any number of possibilities could have occurred. In a case like this, virtually anybody that crosses the path of the project has been sued. It may be for work that they did, work they didn't do, statements they made, statements they didn't make. They could have tripped over a rafter and hurt somebody, and that could have caused a claim. We don't know. Looking at the four corners of the complaint, originally five, all we know is that it is asserted that Giannetti Feldman were negligent, period, and that resulted in property damage. That's all we know as we begin. The Keller complaint identifies that among the acts of services and or the provision or non-provision of products, but it's generic, it's general, and it's not inclusive. It's not exclusive to all other possible causes relating to the negligence. In the face of this claim, there's only one party that retained the services of Giannetti Feldman, and that's Mr. Havich of the Allen Group. Mr. Havich had not asserted any claims of negligence. Professional services were rented by Giannetti Feldman, if they were rented at all, to Mr. Havich and the Allen Group, not to the developer, not to the contractor, not to the homeowners. There was no privity between Giannetti Feldman and any of these other parties. Now prior to 2003, the rule of law was a professional owes a duty only to his client. In 2003, an architect could be held liable for negligence if his services did not meet the level of professional care that's set forth by building standards. This is an action arising out of claims in 1991 and 1992, well before that amendment. At that time, the claims that could have been asserted against Giannetti Feldman would have been and should have been only by Havich and the Allen Group. There are no such claims. Instead, the developer, contractor, and other subcontractors say, if we're liable, in some manner you owe us an indemnity, or it is your fault, or it is your negligence. The record was never developed because the case settled before anybody was able to identify whether the negligence that is being accused to Giannetti Feldman related to professional services or something else. But let me ask, is there any evidence, and I realize, of course, we're trying to define coverage based on the allegations in the complaint, but is there any evidence, extrinsic or otherwise, suggesting that services other than professional architectural services were provided? There's no evidence in either direction. Consequently, we're left with the four corners of the complaint which allege negligence and property damage. Looking at the policy, the policy provides for property damage caused by an accident. There is nothing that establishes that this is professional services only that is being sued upon. Consequently, there is no basis for a determination that there is no possibility of coverage under the policy. And that's what Burlington had to do. In order to avoid its duty to defend, it had to come forward with Now, the court improperly required Giannetti to prove that the claims were not related to professional liability. That's not Giannetti's burden. Giannetti's burden is to show that the claims may be covered by the policy. It is Burlington's obligation to come forward and prove that those claims were solely for an excluded cause, namely professional services. That is a mistake that the court made. That was fatal. In this particular case, Your Honors, the question of whether there was an initial potential for coverage was never raised by Burlington. Burlington conceded that there was a potential for coverage. It simply maintained that any potential coverage was excluded by the professional liabilities exclusion. And there's no question that the party who was supposed to provide the insurance basically had elected in writing not to provide professional negligence coverage for Giannetti. Isn't that correct? Well, what happened is an offer was made for two coverages, commercial general liability and professional negligence or professional liability. In reviewing the policy proposals, it appears that what Habitsch did, and we don't know he's dead, what Habitsch did is look at the two policy proposals, determined that his needs were satisfied by the commercial general liability policy. It seemed to cover contractual liability, completed operations, and he didn't think that he needed anything more. The policy form itself was titled consulting architects and engineers. He's a consulting architect and engineer. It specifically said including completed operations. There was no reference in the proposal or in the daily report, the declarations page, that specifically brought his attention to an exclusion for either completed operations or professional liability coverage. He declined to buy the second policy. It's very expensive, relatively speaking, because he felt it was, appears to have felt that this was a sufficient policy. The problem with the exclusions, and we've brought this up rather extensively in our papers, is that they are buried deep in the policy in small font without reference and without linking them to the coverage provisions. But in these, there's a heading, exclusion, and in the exclusion, as I read it, it's pretty clearly excludes negligence from professional services rendered. That is correct, but let's look at that exclusion a little closer. The heading also says that the exclusion only applies to the commercial general liability coverage. It does not refer to the broad form commercial liability coverage. Ergo, a reasonable expectation would be that coverage under the general liability policy is excluded, but whatever benefits are provided under the broad form are not. It is certainly the reasonable expectation of the insured that we are required to divine, and when you look at the construct of this policy and that particular exclusion, the mere fact that the exclusion exists doesn't necessarily mean that the insured was brought to the attention that all professional liability was excluded under the policy, particularly when he paid for and was sold a broad form that explicitly says we give you coverage for this type of thing, particularly for services provided to you on your behalf. But if your argument is accepted, wouldn't the insurance carrier under the circumstances in every case have to say we're providing this basic liability coverage for premises, but we're excluding professional negligence? Wouldn't you in effect have to say that at the bottom of every page? And what would be so wrong with that? If it provides clarity and understanding about what the insured has and has bought and has received, that would benefit society. The policy and the insurance company didn't do this. I would like to reserve the rest of my time if I could. All right. Good morning, Your Honors. May I please have the floor? My name is Brian Weiss. I represent the Apelli Burlington Insurance Company. Just so we're all on the same page here, I just want to make sure that we're clear on what I believe this Court's standard of review is, which is the clearly erroneous standard, because this was a court trial, not a motion of some sort. And under the clearly erroneous standard, this Court has to have a definite and firm conviction that there was a mistake made by the trial court before it overturns that decision. On a factual issue, but isn't this a legal issue of interpreting that policy? Yes, but the Court also, in fact, we got to the court trial because the Court initially in response to the summary judgment motion felt that there were some factual issues that needed to be cleaned up and invited us back in October of that year to, after having clarified some of those factual issues, to have the court trial. So I think it was, at best, a mixture. But it certainly was not a summary judgment motion, as counsel would have the court believe. It was a court trial. It was a bench trial. But at a minimum, weren't these mixed questions of fact and law that the Court ruled on? Yes. And if that's true, doesn't that change the standard a little bit? Well, I still the issue of contract interpretation, yes, is an issue of law. But it was a question of fact as to how the policy was put together and what was intended. And I think that's the main focus of what this hearing is all about. So, again, I would, as I argued in the brief, assert that it's a clearly erroneous standard. There are three. And then, of course, when you look at the Court's statement of decision, I don't see how you could come to the conclusion that there was a firm and definite – I mean, a definite and firm conviction that a mistake was made. There are, in my mind, three separate and distinct reasons why there – the Burlington policy does not provide coverage for this claim. In summary, the first one is that, quite simply, Giannetti Felderman is not an insured for all purposes for its own direct liability. It was an additional insurer for a very limited scope of coverage, namely, if it was being sued because of work that Habich or Habich did for it. And that was not the situation here. I'll get back to that in a second. The second reason is because the policy quite clearly excluded coverage for completed operations liability. And third, as was the focus of counsel's discussion just prior, the professional liability exclusion. If the Court finds that any of those three issues operate to preclude coverage, then we can stop right there. There is no coverage, and the judgment should be affirmed. Well, how about opposing counsel's argument that we look at the complaint and it relates to sustainability? The rule in California is that it actually cuts both ways, depending on whose side you're on. But, you know, some states have what they call a four corners rule, which is you have to stop at the pleadings. And if the pleadings are potentially, you know, covered, then you stop there. If they're not, then you can stop there as well. California requires an insurance company to go beyond the pleadings and to look at the extrinsic evidence. And in some cases, that hurts the insurance company. In other cases, I think it could help. And in this case, the extrinsic evidence was clear that the only thing that Jeanette Felderman did at this project was to provide design professional services. How did we get to the extrinsic evidence if it was settled? Well, when the complaint was originally tendered by counsel, who just argued the case, he said in the letter that my client was hired as a design professional on this project, hired by Habich. And then in discovery responses and when the case was being litigated, again, it was admitted in a separate statement in support of the summary judgment that this is what they did. There was no evidence that they did anything. So in response to my question, it was as part of the discovery. This was flushed out. And also in the initial tender by counsel. Well, just a tender by it. He said that he performed it, but it wasn't necessarily out of that performance. Suppose he'd done something, let a truck run into something. Well, first of all, we briefed that issue below, which is that if, in fact, that was the theory, Burlington never said we don't want to hear what you're really sued about. Burlington said you were sued because you were a design professional. And at no time did anyone come back to Burlington and say, no, no, that's not true. We got sued because we drove a truck onto the premises or we got sued because we tripped over a ladder and somebody damaged property. The insurance company, as the lower court noted correctly, is not required to go out and investigate all kinds of theories of liability that might have been pled but weren't, especially when the insured in the tender says we were hired as a design professional. And that's, you know, the only thing it could have provided to the project. It never said we were design professional, but we also did X, Y, and Z, separate and distinct from that. Well, it could be hired as a design professional and running into something with your car on the job. But, you know, and interestingly, see, that dovetails into an issue that has really been skirted around, which is that that would be G&ID Felderman's direct liability. Okay, well, it wasn't insured for its direct liability. The additional insured endorsement that it is seeking coverage under says that G&ID Felderman isn't insured, but only with respect to its liability arising out of work that Habich did for G&ID Felderman. And the situation here was reversed. G&ID Felderman was hired by Habich as, you know, Habich was the architect of record. And he brought in, you know, other people to help him out. But ultimately, he signed off on the plans. It was his project. So if G&ID Felderman had some independent act of liability separate and distinct from its work for Habich, then it would not be insured under the endorsement. The endorsement is very specific, and it's very standard in the industry. Well, it's clear it had to arise out of the employment of this claimant. But, again, how about on the job? The guy runs into it. It would arise out of it. He ran his car into it. Well, again, Burlington at no time said to anyone, you know, we don't want to hear that. You know, it said this is how we see it. Well, that's, I guess, what I'm really interested in is what was the evidence that tied it to the negligence as a result of professional conduct? Well, first of all, you have the allegation in at least one of the cross complaints that says that was the Keller cross complaint that specifically said G&ID Felderman was a design professional and consultant on the site. And then that became a defined term and, you know, was throughout all the pleadings. And, you know, again, I guess we're going around in circles again. But, again, if you only have one possible reason for this person being on the job, and that's all we know, and the insurance company has not told any other theory of liability, you can't just create coverage out of whole cloth. There has to be something that says, all right, well, you were hired as a design professional, but you're being sued on some other theory that we're not being made aware of. Talk to me a little bit about the burden of proof. The appellant says that the court inappropriately assigned the burden of proof to the appellant. Well, it's an insured's burden to bring the claim within the scope of the insuring agreement. And included in that burden is necessarily, and by definition, the requirement that the insured prove that it is an insured to begin with. Because if you're not an insured, then you're not entitled to coverage. And in this case, in order for G&ID Felderman to be an insured, it would have to prove that its liability is consistent with the additional insured endorsement, that it was being sued because of work that Habich did for them. In essence, their vicarious liability for Habich's work. And that's their burden. That's their burden. I would submit to the court that the burden does not fall on an insured to prove the terms and conditions of an exclusion. But when you're talking about the basic elements of the insuring agreement, I would argue that that is the insured's burden. In addition, the insuring agreement requires that there be some type of occurrence. And we cited at least one case in our materials, the Ray case, R-A-Y, that talked about how professional liability, professional negligence is not an occurrence. So when you have a policy that excludes professional liability exposure, proving that there was an occurrence would be the insured's burden. I don't want to lose sight of the fact that the policy also clearly, unmistakably excluded coverage for completed operations. And there was an endorsement for that that was clear and distinct on its face. And that's a very important issue in this case because the property damage arose well after the insured's work was completed. And so irrespective of the professional liability exclusion, if the court finds that there was no coverage for completed operations, then, again, you don't even have to get to the allegations of the complaint. You don't have to get to the professional liability exclusion. You can stop simply at the completed operations coverage. I see my time is up. Thank you, Your Honor.  I do have one question with regard to the burden of proof. Is the burden of proof the same for an exclusion from policy? Whose burden is that? The burden on an exclusion falls on the insurance company. Yeah. So that's kind of the disagreement between you and opposing counsel is with regard to the burden. But it's a question, I think, when you talk about burden is, you know, in what spectrum are you placing the burden? Is it the burden to come within the purview of the policy or is it the burden of an exclusion? Okay. Thank you. We do look at the four corners of the complaint in California. But the insurer can look beyond the four corners if additional information is available. In this case, the only additional information that was provided was provided by the insurer. Gennetti identified himself as having had a contract with Havich whereby he was going to provide, he was hired to provide design consultancy services. That's true. No question about that. But there was no discovery in the case, nor was there anything that. There was no discovery? There was no discovery in the case. At all? At all. This was subject to a case management order. Everybody was brought in. They immediately shuttled everybody out into a mediation program. There was no discovery. There was a requirement for people to drop certain documents into a central depository. But there were no depositions. There were no interrogatories. There were no document production requests that were specific to anybody. And there was no evidence that the claims that were asserted by any of the subcontractors, by Keller or by Haseko, were limited to professional services. Now, the relationship between Haseko, between Havich and Gennetti Feldman was an interclined one. Both parties agreed to do things for each other. Havich undertook to take on certain responsibilities, be the architect of record, and to sign off and to ensure all standards were met. Gennetti agreed to provide some observation, some design consultancy, some color arrangement, exterior appearances, that design intent was being followed in the process. Havich was the architect of record. Gennetti did some things for Havich. Havich undertook to do some things for Gennetti Feldman, sign off on all the work, advise them of all changes that were going to be required, keep them abreast. Consequently, the additional ensured endorsement, even under their narrow construction, I don't agree with their narrow construction, still did provide for a potential for coverage because Havich did provide some services for Gennetti Feldman. Whether you read it in either direction, services were rendered. But is there any extrinsic evidence as to those services being other than professional services? There's no extrinsic evidence on what services were actually performed. What the evidence exists is they were hired to do design consultancy service. There's no evidence as to what they actually did or didn't do or what additional things that are unrelated to professional services they might have done. There's simply nothing in the record. And for the insurer to slam the door shut and say, we're not going to cover you, notwithstanding the fact the complaint says negligence and property damage, because we've got this exclusion on professional services and because you are an architect or design consultant, there's a huge logical gap. Remember, it is what they did, not what they were hired to do, that is relevant. If what they did amounts to negligence and is not related to professional services, there's coverage. But there's no record developed. We don't know what they're accused of having done. The accusing parties haven't said anything beyond what they said in the four corners of the complaint. Consequently, we submit that there is a potential for coverage, and was at the outset, that was never negated by the insurance carrier. And as far as the insured, Gennady Feldman, showing that it was an additional insured entitled to policy coverage, they identified, we identified, that we were an additional insured. We provided the certificate. We showed them the endorsement. We established that a premium was paid for the additional insured endorsement. And then they finally relented and said, okay, it's not in our certified file, but we acknowledge it. So we've done everything that we can do. We've shown a claim is being made for property damage. It's out of acts of negligence, and we are an insured under the policy. The burden then shifts. They haven't shown, and they cannot show, that the claims are limited to professional services actually rendered. Consequently, they had a duty to defend. We've been denied that duty. Your Honor, even if the claims ultimately turned to be false, groundless, and fraudulent, we were entitled to a defense. We didn't get it. Roberts. All right. Thank you, Counsel. Thank you. Mr. Turd will be submitted in the proceeding.
judges: Hug, Wardlaw, Suko